**Randy J. Harvey** (OSB No. 116714)
Randy@bassingerharveylaw.com
BASSINGER & HARVEY
PO Box 1309
21887 SW Sherwood Blvd., Suite B
Sherwood, Oregon 97140
Telephone: (503) 822-5340
Facsimile: (503) 433-1404

**Of Attorneys for Plaintiff
Nestor Alves**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **NESTOR ALVES,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTRAL OREGON COAST FIRE AND RESCUE DISTRICT**, and **GEORGE WOODSON,** Individually and in his official capacity,<br><br>Defendants. | Case No.  **6:20-cv-00180**<br><br>**COMPLAINT**<br><br>1. Discrimination Based on Race;<br>2. Denial of Due Process;<br>3. Retaliation; and<br>4. Unpaid Wages<br><br>**DEMAND FOR JURY TRIAL**<br><br>CLAIMS NOT SUBJECT TO MANDATORY ARBITRATION<br><br>CLAIM: $1,113,787<br><br>Filing Fee: $400 |

Plaintiff alleges:

**I. INTRODUCTION**

1. This is a case where Plaintiff, a Hispanic male, was employed as a fire captain by one fire chief, and thereafter a subsequent fire chief was hired. The new fire chief had

1 – COMPLAINT

express animosity for Latinos, Hispanics and Mexican Americans referring to them in derogatory terms and treating them differently that white employees. Plaintiff, who was a captain in the Defendant's employ, discovered and reported multiple safety violations, outdated equipment and outdated medical supplies and reported them to the Defendants. When Defendants failed to respond, Plaintiff reported the issues to the Occupational Safety and Health Administration (hereinafter, "OSHA") and Defendants were investigated and corrective action was taken. Thereafter, Plaintiff was subjected to discrimination, harassment, and retaliation for his protected activity, not paid his wages and eventually terminated. Plaintiff filed a complaint with Oregon Bureau of Labor and Industry (hereafter "BOLI") and BOLI issued a Notice of Substantial Evidence Determination" to the District on November 15, 2019. Plaintiff brings this suit to recover damages.

**II.    JURISDICTION AND VENUE**

2.      This court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in Oregon District federal court in the Eugene Division, pursuant to 28 U.S.C. § 1391 (b)(1) and (2), because the events giving rise to the Plaintiff's claims arose within the Oregon district, and because the Defendants reside in the Oregon District for purposes of venue and jurisdiction.

**II.    THE PARTIES**

2.      Central Oregon Coast Fire and Rescue District (hereinafter, the "District") is an Oregon corporation (not registered with the corporation division) with its principal place of business in Lincoln County, Oregon.  The District is an employer under ORS 659A.001 (4).

3. George Woodson (hereinafter "Woodson") is a citizen of the state of Oregon and resides in Lincoln County, Oregon. At all material times, Woodson lived and worked within the State of Oregon.

4. The District and Woodson are hereinafter referred to jointly as "Defendants."

5. Plaintiff resides in Lincoln County, Oregon and lives and works in that county

### III. FACTUAL ALLEGATIONS COMMON TO MULTIPLE CLAIMS

6. Plaintiff gave a Tort Claim Notice, formal notice and actual notice to Defendants of his intent to pursue legal action by letter on July 30, 2018. The conduct at issue occurred less than 180 days prior to notice. Plaintiff has complied with ORS 30.275.

7. Plaintiff filed a complaint with BOLI on November 7, 2019, alleging retaliation for filing complaints including an OSHA complaint, discrimination based on whistleblowing, and discrimination based on national origin (Hispanic).

8. BOLI investigated the complaints and gave a "Notice of Substantial Evidence Determination" to the District on November 15, 2019.

9. BOLI issued a 90-day Notice of Right to Sue to Plaintiff on November 8, 2019, this suit was filed within that ninety-day period.

10. The District employs one or more persons in the State of Oregon and is an employer pursuant to ORS 659A.001(4)(a).

11. Plaintiff was hired by the District on or about February 15, 2017 as a Firefighter and Captain.

12. Beginning in or around April or May 2017, Plaintiff made several complaints to Woodson regarding the safety of equipment provided to Plaintiff by the District.

13.     Plaintiff was responsible to complete OSHA compliance training, which he did. Plaintiff was aware of OSHA violations and reported them to the Defendants and they refused to address the OSHA safety issues.

14.     On or about May 29, 2018, Plaintiff filed a complaint with OSHA regarding safety violations by Defendants and OSHA confirmed to Plaintiff by letter dated May 31, 2018.

15.     OSHA cited the District for safety violations.

16.     Thereafter, Woodson was overheard by an employee conspiring with a board member(s) to terminate Plaintiff's employment.

17.     Woodson alleged that Plaintiff was required to hold an Oregon Emergency Medical Technician (hereafter "EMT") license as a matter of Oregon law and as a condition of his employment contract.

18.     Plaintiff disputed that his employment required that he hold an EMT license as a condition of employment but agreed to pursue an EMT license.

19.     Plaintiff disputed that Oregon law, or his employment contract required that he hold an EMT license as a condition of employment but agreed to pursue an EMT license.

20.     Plaintiff was a member of a union that had a collective bargaining agreement with the District.

21.     Under the terms of the Collective Bargaining Agreement (the "CBA"), Plaintiff was entitled to receive reimbursement for taking the EMT training and to receive paid time off.

22.     Plaintiff attempted to attend several EMT trainings that were cancelled by the provider.  Defendants denied Plaintiff leave and funding to take available classes, instead

offering to allow him to pay for his own training and arrange schedule trades with other firefighters to cover his shifts. Due to short notice, Plaintiff was unable to arrange schedule trades and could not attend the training.

23. Caucasian employees were granted reimbursement and paid time off to take classes.

24. Defendants' denial of reimbursement and paid leave violated the CBA.

25. On or about March 19, 2018, Defendants sent a letter to Plaintiff setting an artificial deadline of ninety days for Plaintiff to complete his EMT license training and told Plaintiff if he failed to complete his licensure Defendants would terminate his employment.

26. On or about March 21, 2018, Plaintiff sent an email to Woodson stating in part, "I have requested approval twice to attend an EMT refresher course, which is required in order to take the National Registry test and obtain my EMT, which you have denied both times. There is a class starting yesterday that I requested approval for since the one at CCFD was canceled, which you also denied. The two EMT refresher courses that you wanted be to attend, in order to save the department money, were canceled. The EMT refresher course that was in Pendleton in December of 2017 that I requested to attend, you would not approve either."

27. On or about April 25, 2018, Woodson sent a letter to Andy Parker, the President of the Newport Professional Fire Fighters Association, concerning Plaintiff stating in part, "We [Woodson and the District Board] also discussed your request to reimburse Mr. Alves for expenses relating to the EMT refresher course that he attended. The Board feels as this was a pre-employment requirement to be an Oregon licensed EMT that the district will not provide any reimbursement at this time. But when he provides us with an Oregon EMT

5 – COMPLAINT

license, we can re-consider this." The letter further states, "[Plaintiff] had over 14 months to obtain his license but has not gotten it and therefore we must put a deadline of 60 days for Mr. Alves to obtain his Oregon EMT license. He will have until June 25, 2018 to submit an Oregon EMT license to us. If he does not meet the June 25th deadline we will need to meet and discuss his future with the fire district."

28.     Plaintiff's employment was not conditioned on holding an EMT license, the offer letter makes no mention of requiring an EMT license and no written agreement was entered into as part of Plaintiff's employment with the District to complete his EMT license as a condition of employment. The claim was pretext for unlawful discrimination.

29.     The District no longer holds Lincoln County Ambulance Service Areas and EMT license is superfluous at best and, at worst, was unnecessary the District expenditure in terms of salary and additional fees for periodic recertification.  In 2017, Chief Sterns and union official Dustin Joll, presented to the Board the hiring of Plaintiff, and discussed that Plaintiff's EMT standing in not important now that the District does not hold an AA, and the fact that should goals change in that regard, the District and its employee have a newly ratified contract to facilitate the change.

30.     Woodson engaged in multiple unsafe actions placing firefighters at risk of injury, requiring them to engage in unsafe activities and to use unsafe and out of date equipment.

31.     Woodson placed the citizens of Lincoln County at risk when he retrieved expired saline flushes from the trash that cadets had thrown out because they were expired and placed them back in the ambulance. Woodson also told Ms. Steinman that lubricant

which had been expired for years was okay to use because it was still sealed. Woodson left the lubricant in the ambulance.

32. Woodson placed employees at risk by requiring them to drive safety equipment on tires more than ten years old, even after he was informed the practice was unsafe per NFPA and USDOT guidelines.

33. Woodson was provided with a list of employees who needed new turnouts in November 2017, but Woodson refused to fit employees with new turnouts until May 2018. As of July 18, 2018, the turnouts had not been issued and at least one firefighter had been fighting interior structural fires in improperly fitting turnouts.

34. Woodson ordered surplus breathing apparatus for employees to use. When the masks arrived, several still contained vomit in them. The way the masks work, the regulator is attached inside the mask, so vomit [is] inside all of the internal parts of the effected masks.

35. Woodson purchased light bars for vehicle #7230 that were cheaper from an unknown manufacturer in China, which resulted in higher costs to the District because they had to be specially rewired for the vehicle taking the vehicle out of service. As of November 17, 2019, the vehicle's light bar is inoperable and the taillights on the vehicle are inoperable and not roadworthy.

36. Woodson conducted an extrication demonstration during Beachcombers and Ms. Steinman found multiple safety issues with this event, including:

> A. Combined with other events the District was doing for Beachcombers, they were understaffed;
>
> B. Woodson did not properly prepare the participants for the extrication itself with no pre-event planning or training;

7 – COMPLAINT

      C. Woodson did not make sure the tank on the car that was being used had a safe level of gasoline;

      D. Woodson asked Ms. Steinman to pretend to cut the battery cables, which would have left a live battery connected with a risk of explosion; and

      E. None of the participants had been issued extrication gloves.

37. Plaintiff repeatedly raised safety concerns with Woodson and Woodson ignored the concerns or dismissed them outright. When Plaintiff and other employees raised their concerns with the District Board, they suffered retaliation by Woodson.

38. Defendants created a false job description which alleged to include an EMT requirement and delivered it to a BOLI investigator as evidence that Plaintiff knew he was required to hold an EMT license.

39. Plaintiff was not a probationary employee.

40. Plaintiff was entitled to meaningful due process under the Fourth and Fourteenth Amendments, prior to termination of his liberty interest in employment.

41. Plaintiff was not given a meaningful opportunity to present evidence why he should not be terminated and was denied a meaningful due process hearing.

42. On or about May 2, 2018, Plaintiff's union sent a letter notifying Defendants that Plaintiff was not being paid properly. The union informed the District that Plaintiff's correct pay was "$53,714/year, $4,476.17/month, $18.44/hr and his 1% incentive pay for technical rescue pay."

43. The District agreed to correct Plaintiff's salary as stated, "After reviewing the contract we will agree to increase Mr. Alves salary one step and make it retroactive to his anniversary date of February 15, 2018. However, because our payroll person only comes into

8 – COMPLAINT

the office once per week, we will not be able to accomplish this within the 2 business days you requested."

44.     Woodson never followed through on Plaintiff's pay increase and Plaintiff's pay was not increased as promised by Woodson.

45.     On February 27, 2018 at 3:17 p.m. Plaintiff sent an email to Woodson regarding his pay being incorrect. Plaintiff was not paid the proper hourly rate for straight time, for overtime, or for vacation pay. Plaintiff also stated:

> "Given that, from February 2017 I should have received salary of 53,193 (2,216.38 a pay period + overtime/extra hours over 144 hours a pay period) a year until July 1, 2017 when it should have been increased to $54,799.43 (2,283.29 a pay period and as above) and as of February 2018 should be $56,442.89 (2,351.79 a pay period and as above)."

46.     Plaintiff sent another letter on or about March 4, 2018 to Woodson and others regarding his pay being incorrect and explaining that he had not been paid properly since his date of hire.

47.     Plaintiff's pay was not corrected and at the time of Plaintiff's final pay check, he was not paid the wages owed even though he had demanded them multiple times and Woodson willfully and intentionally failed to pay Plaintiff.

IV.    CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**

**COUNT ONE**

**(Against Woodson Individually)**

**(42 U.S.C. § 1981 Count One: Discrimination Based on Race)**

48.     Plaintiff hereby incorporate paragraphs 1 through 47 by reference.

49.     Plaintiff is a member of a protected class as a Hispanic.

50. Plaintiff performed all of his duties and the requirements of his position at or above required standards of performance.

51. Woodson sought a replacement for Plaintiff with the same or similar qualifications which demonstrates a need for the position held by Plaintiff.

52. Plaintiff's replacement was not Hispanic nor a member of a protected class.

53. While Plaintiff was employed, Woodson ignored and failed to engage Plaintiff because of his race, including:

    A. Not listening to safety concerns raised by Plaintiff;

    B. Not responding to requests for safety equipment and firefighting equipment;

    C. Ignoring requests for professional development funding provided for in the CBA;

    D. Ignoring or denying requests for paid leave for professional development provided for in the CBA;

    E. Using pretextual claims of improper licensure as a basis to terminate Plaintiff's employment; and

    F. Speaking about Hispanics' in derogatory terms using racial epithets, e.g., calling Hispanics "Chico" regardless of their given name.

54. Plaintiff was targeted by Woodson for termination based on his race as demonstrated by Woodson providing benefits to Caucasian employees that were denied to Plaintiff.

55. As a direct and proximate result of Woodson's conduct Plaintiff has suffered financial loss and is entitled to recover back pay and front pay in an amount to be proven at trial, but no less than $315,000 plus health care insurance costs.

56. Plaintiff is entitled to recover emotional distress damages in an amount to be proven at trial, but not less than $300,000 .

57. Plaintiff is entitled to recover punitive damages in an amount to be proven at trial, but not less than $315,000.

58. Plaintiff is entitled to recover reasonable attorney fees and costs according to proof (42 U.S.C. § 1988).

## COUNT TWO

### (Against Defendants)

### (Discrimination Based on Race, ORS 659A.030)

59. Plaintiff hereby incorporates paragraphs 50 through 58 by reference.

60. Woodson is employed by the District as Fire Chief and reports directly to the District Board of Directors.

61. The District accepted, supported and affirmed the conduct of Woodson when it terminated Plaintiff's employment.

62. As a direct and proximate result of Woodson's conduct, Plaintiff has suffered financial loss and is entitled to recover back pay and front pay in an amount to be proven at trial, but not less than $315,000 plus health care insurance costs.

63. Plaintiff is entitled to recover emotional distress damages in an amount to be proven at trial, but not less than $300,000.

64. Plaintiff is entitled to recover punitive damages in an amount to be proven at trial, but not less than $315,000.

65.     Plaintiff is entitled to recover reasonable attorney fees and costs according to proof (ORS 659A.885).

## SECOND CLAIM FOR RELIEF

### (Against the District)

### (Denial of 4th, 5th and 14th Amendments Due Process)

66.     Plaintiff hereby incorporate paragraphs 59 through 65 by reference.

67.     Plaintiff was a permanent employee of the District governed by a collective bargaining agreement.

68.     Plaintiff was terminated from his employment without the opportunity to review the unclassified evidence against him.

69.     Plaintiff was denied a meaningful opportunity for a hearing to present facts and evidence to controvert claims of the District because the reason given for his termination was pretext for unlawful discrimination and retaliation.

70.     Woodson and the District conspired to unlawfully terminate Plaintiff for his whistleblowing and because of his race.

71.     Plaintiff was deprived of his employment with the District.

72.     As a direct and proximate result of the District's conduct, Plaintiff has suffered financial loss and is entitled to recover back pay and front pay in an amount to be proven at trial, but not less than $315,000 plus health care insurance costs.

73.     Plaintiff is entitled to recover emotional distress damages in an amount to be proven at trial, but not less than $300,000.

74.     Plaintiff is entitled to recover punitive damages in an amount to be proven at trial, but not less than $315,000.

75. Plaintiff is entitled to recover reasonable attorney fees and costs according to proof (42 U.S.C. § 1988).

## THIRD CLAIM FOR RELIEF

### (Against the District)

### (Retaliation, ORS §§659A.199; 659A.203; and 659A.230)

76. Plaintiff hereby incorporates paragraphs 66 through 75 by reference.

77. Plaintiff reported unlawful activity of Woodson to OSHA by written public complaint as detailed above.

78. The concerns raised by Plaintiff addressed the public health and safety needs of Plaintiff's fellow employees to have proper firefighting clothing and equipment; and raised concerns addressing public health and safety needs pertaining to properly maintained and equipped fire trucks and ancillary equipment.

79. After Plaintiff complained to OSHA and members of the community and the District Board of Directors, Woodson subjected Plaintiff to adverse treatment including, denial of access to contractual benefits, denial of Plaintiff's requests for safety equipment, Defendants failure to properly pay Plaintiff, and Defendants terminating Plaintiff's employment.

80. As a direct and proximate result of Woodson's conduct Plaintiff has suffered financial loss and is entitled to recover back pay and front pay in an amount to be proven at trial, but no less than $315,000 plus health care insurance costs.

81. Plaintiff is entitled to recover emotional distress damages in an amount to be proven at trial, but not less than $300,000.

82. Plaintiff is entitled to recover for loss to his reputation in an amount to be proven at trial, but not less than $105,000.

13 – COMPLAINT

83. Plaintiff is entitled to recover punitive damages in an amount to be proven at trial, but not less than $315,000.

84. Plaintiff is entitled to recover reasonable attorney fees and costs according to proof (ORS 659A.885).

## FIFTH CLAIM FOR RELIEF

### (Against the District)

### (Failure to Pay All Wages Due Upon Termination Under ORS §§ 652.140; 652.150; 652.200; Liquidated Damages Under 29 U.S.C. § 216)

85. Plaintiff hereby incorporates paragraphs 76 through 84 by reference.

86. The District willfully failed to pay Plaintiff all wages to which he was entitled to receive upon his termination, retroactively for improper placement on salary schedule.

87. The District willfully failed to pay Plaintiff.

88. Plaintiff was harmed in the amount of $37,068 in unpaid wages.

89. Plaintiff is entitled to recover statutory penalty wages because the District acknowledged the pay was owed and failed to pay the amount of $4,651.00 (30 x 8 x $19.38) (ORS 652.150).

90. Plaintiff is entitled to statutory interest at 9% per annum on the unpaid wages.

91. Plaintiff is entitled to recover reasonable attorney fees and costs.

92. Plaintiff is entitled to recover liquidated damages pursuant to 29 U.S.C. § 216 in the amount of $37,068.

## V.   DEMAND FOR JURY TRIAL

93. Plaintiff respectfully requests a jury trial on all triable claims and issues herein.

VI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

94.     Economic and noneconomic damages as described in paragraphs 64, 74 and 82 above in the amount of $315,000;

95.     Emotional distress damages as described in paragraphs 65, 75 and 83 above in the amount of $105,000;

96.     Liquidated damages pursuant to 29 U.S.C. § 216 in the amount of $37,068;

97.     Awarding Plaintiff $4,651.00 in statutory waiting time penalties pursuant to ORS 652.150;

98.     Punitive damages pursuant to ORS 659A.885 and 42 U.S.C. § 1988 to be proven at trial in the amount of $315,000;

99.     Plaintiff's costs and disbursements, including reasonable attorney fees, costs and expert witness fees pursuant to ORS 659A.885, and 42 U.S.C. § 1988;

100.    Pre- and post-judgment interest on all amounts due to Plaintiff; and

101.    Any other relief the Court deems just and equitable.

Respectfully submitted this 31st day of January, 2020.

            BASSINGER & HARVEY

            */s/ Randy J. Harvey*
            **Randy J. Harvey** (OSB No. 116714)
            Randy@bassingerharveylaw.com
            Trial Attorney: Randy J. Harvey

            Of Attorneys for Plaintiff